**Slip Op. 06-51**

## UNITED STATES COURT OF INTERNATIONAL TRADE

HABAS SINAI VE TIBBI GAZLAR
   ISTIHSAL ENDUSTRISI A.S.,

                  *Plaintiff,*

            v.

UNITED STATES,

               *Defendant.*

Court No. 05-00613

[Out-of-time motion for leave to intervene in action challenging Final Results of administrative review of antidumping duty order granted.]

Dated: April 10, 2006

    Law Offices of David L. Simon (David L. Simon), for Plaintiff.

    Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director, Jeanne E. Davidson, Deputy Director, and Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (David S. Silverbrand); Ada L. Loo, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, Of Counsel; for Defendant.

    Wiley Rein & Fielding LLP (Alan H. Price and John R. Shane), for Proposed Defendant-Intervenors.

## OPINION

RIDGWAY, Judge:

    At issue in this action are the final results of the U.S. Department of Commerce's

administrative review of the antidumping duty order covering certain steel concrete reinforcing bars

("rebar") from Turkey for the period April 1, 2003 through March 31, 2004. *See* Certain Steel

Concrete Reinforcing Bars from Turkey: Final Results, Rescission of Antidumping Duty Administrative Review in Part, and Determination to Revoke in Part, 70 Fed. Reg. 67,665 (Nov. 8, 2005) ("Final Results"). Plaintiff Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi A.S., a Turkish producer of the subject merchandise, challenges the Final Results, asserting that Commerce erred in using annual cost (rather than quarterly cost) in calculating Habas' cost of production, and that Commerce erred in treating invoice dates (rather than contract dates) as Habas' dates of sale.

Now pending before the Court is the out-of-time Motion to Intervene As A Matter of Right filed by domestic producers and proposed Defendant-Intervenors Nucor Corporation, Gerdau AmeriSteel Corporation, and Commercial Metals Company ("Domestic Producers"). *See also* Domestic Producers' Motion for Leave to File Out of Time ("Dom. Prods. Brief"). The Government consents to the proposed intervention, but plaintiff Habas objects. *See* Plaintiff's Opposition to Motion of Nucor *et al.* For Leave to File Motion to Intervene Out of Time ("Habas Brief") at 4.

For the reasons set forth below, the Domestic Producers' motion to intervene is granted.


## I. **Background**

On November 8, 2005, Commerce published the Final Results of its administrative review of the antidumping duty order on steel concrete rebar from Turkey for the 2003-2004 period of review. *See* Final Results, 70 Fed. Reg. 67,665. Habas filed its Summons and Complaint challenging the Final Results a mere two days later, on November 10, 2006. Habas and the Government then negotiated and submitted a Proposed Briefing Schedule, which the Court adopted in its Scheduling Order entered on February 3, 2006.

The Domestic Producers' Motion to Intervene was filed on February 6, 2006 – nearly three full months after service of Habas' Complaint.[1]  It is undisputed that the motion was filed late.  It is also undisputed that the Domestic Producers otherwise satisfy all criteria for intervention as a matter of right in this action.  *See generally* Dom. Prods. Motion to Intervene As A Matter of Right at 1; 19 U.S.C. § 1561a(d) (2000); 28 U.S.C. § 2631(j)(1)(B) (2000).

The Domestic Producers assert that their failure to timely intervene "is entirely due to inadvertence," and should therefore be excused.  *See* Dom. Prods. Brief at 2.  According to the Domestic Producers:

> [W]hile the records of the Domestic Producers' attorneys show that the summons and complaint were served, the summons and complaint were inadvertently left unentered into the pleading files and electronic document system of the attorneys' firm. Therefore, although the documents had been properly served, there was no indication of the documents' existence either in the hard copy pleading binder or electronic document system.

Dom. Prods. Brief at 2.[2]

---

[1]Although the Domestic Producers' Motion to Intervene is dated February 2, 2006, the text of the motion recites events that occurred on February 6, 2006, and the motion was filed on the latter date.  It is thus somewhat unclear precisely when the Domestic Producers became aware of this action and whether, in fact, they "fil[ed] their motion [to intervene] on the same day that they discovered their mistake," as the text of their papers represents.  *See* Dom. Prods. Brief at 4 n.1.

[2]No claim is made that it would be unfair to the Domestic Producers to penalize them for the acts or omissions of their counsel.  Indeed, any such claim would be unlikely to succeed.  Courts generally have shown little hesitation in visiting the sins of counsel on their clients.  *See, e.g.*, Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership, 507 U.S. 380, 396-97 (1993).  *Cf.* Siam Food Prods. Public Co. v. United States, 22 CIT 826, 829 n.3, 24 F. Supp. 2d 276, 279 n.3 (1998) (rejecting party's assertion that "court has generally granted untimely motions [to intervene] only to ensure that parties who had made timely decisions were not prejudiced" by actions of their counsel; citing, *inter alia*, Unicorn Tales, Inc. v. Banerjee, 138 F.3d 467, 470-71 (2d Cir. 1998)).

## II. Analysis

In a case such as this, a motion to intervene as a matter of right must be filed "no later than 30 days after the date of service of the complaint," except where "good cause" is shown for delay. USCIT Rule 24(a). "Good cause" is defined as "mistake, inadvertence, surprise or excusable neglect." *Id*.[3] The Domestic Producers here characterize their excuse as "inadvertence." *See* Dom. Prods. Brief at 1-4.[4]

---

[3]Delay also may be excused "under circumstances in which by due diligence a motion to intervene . . . could not have been made within the 30-day period." USCIT Rule 24(a). No such circumstances are present here.

[4]The Domestic Producers seek to minimize their "inadvertence" by emphasizing the speed with which Habas filed this action. According to the Domestic Producers, Habas' alacrity "considerably shortened the amount of time available to the Domestic Producers to become aware of the inadvertent failure to enter the summons and complaint into the pleading files and electronic case system, and thus be in a position to timely intervene in [this] action." *See* Dom. Prods. Brief at 2. The Domestic Producers' argument is ill-conceived, for at least two reasons.

First, as Habas explained when it commenced this action, it was compelled to move quickly "in light of the [Commerce] Department's new policy of instructing U.S. Customs and Border Protection to liquidate . . . entries within fifteen days of publication" of the final results of a review. *See* Consent Motion for Preliminary Injunction Against Liquidation of Entries (Nov. 9, 2006) at 4. Habas noted:

> Prior to Commerce's . . . new policy, . . . aggrieved parties could file a complaint . . . within 30 days of Commerce's final results, and thereafter move the Court for an injunction against liquidation, because Commerce routinely did not issue liquidation instructions until many months after the issuance of final results in a given review. However, because the entries may now be liquidated as soon as 15 days after the publication of Commerce's final results, a party may be too late to protect its interests if it does not immediately request an injunction against liquidation. Habas therefore file[d] [its] motion for injunction simultaneously with the filing of its . . . summons and complaint . . . .

*Id*. at 4-5. Indeed, the Domestic Producers filed their own action challenging Commerce's Final Results on November 14, 2005 – a mere four days after Habas filed this case. *See* <u>Nucor Corp. v.</u>

The relevant caselaw is not particularly robust.  Indeed, as the Domestic Producers note, there are no cases interpreting "inadvertence" in the context of USCIT Rule 24(a).  *See* Dom. Prods. Brief at 3 (acknowledging that "the court does not appear to have ever considered the definition of 'inadvertence' in the context of Rule 24").  *See generally* Siam Food Prods. Public Co., 22 CIT 826, 24 F. Supp. 2d 276 (interpreting "excusable neglect" in context of Rule 24(a) and denying motion to intervene); Co-Steel Raritan, Inc. v. U.S. Int'l Trade Comm'n, 26 CIT 1131, 1132-34 (2002), *rev'd on other grounds*, 357 F.3d 1294 (2004) (denying motion to intervene, finding no "good cause"; no specific discussion of "mistake, inadvertence, surprise or excusable neglect"); Geum Poong Corp. v. United States, 26 CIT 908, 217 F. Supp. 2d 1342 (2002) (dissolving order granting out-of-time motion to intervene, finding no "good cause"; no specific discussion of "mistake, inadvertence, surprise or excusable neglect"); *see also* Tung Fong Indus. Co. v. United States, 29 CIT ____, _____, 366 F. Supp. 2d 1308, 1312 n.7 (2005) (finding no "surprise" to excuse out-of-time motion to intervene).[5]

---

United States, Court No. 05-00616 (filed Nov. 14, 2005).  The Domestic Producers therefore should not be heard to argue that Habas moved with extraordinary speed.

Moreover, the Domestic Producers here missed the deadline for intervention not by a matter of days, but by a matter of months.  The Domestic Producers' motion would have been timely only if Habas had consumed virtually every day allowed under the statute for the filing of its Summons and Complaint – something that the Domestic Producers themselves did not do.  For this reason, too, the Domestic Producers' argument has a hollow ring.

[5]The 30-day time limit was added to Rule 24(a) in 1993, and is a provision unique to the Rules of the Court of International Trade.  *See* Siam Food Prods. Public Co., 22 CIT at 827, 24 F. Supp. 2d at 278 (*comparing* USCIT R. 24(a) *with* Fed.R.Civ.P. 24(a)).  The 1993 amendment effectively supersedes much of the pre-1993 caselaw of the Court of International Trade and the Court of Appeals for the Federal Circuit analyzing out-of-time motions to intervene in actions

The Domestic Producers point to a line of cases interpreting "inadvertence" in the context

of "challenges to the liquidation of entries under the now repealed 19 U.S.C. § 1520(c)" – a statute

that "permitted challenges to any liquidation premised upon or involving 'a clerical error, mistake

of fact, or *other inadvertence*.'" *See* Dom. Prods. Brief at 3-4 (emphasis added). But there is some

danger in importing wholesale into Rule 24(a), from some entirely different context, a line of

authority defining the term "inadvertence" (or, for that matter, "mistake," "surprise," or "excusable

neglect"). That is not to say that caselaw from other contexts is of no utility in interpreting Rule

24(a), but only that such caselaw must be analyzed with great care – particularly where the other rule

(or statute) does not include all four of Rule 24(a)'s terms ("mistake, inadvertence, surprise or

excusable neglect") but, rather, uses only one of the terms in isolation.[6]

_____

brought under 28 U.S.C. § 1581(c). *See* Siam Food Prods. Public Co., 22 CIT at 827-28, 24 F. Supp. 2d at 278-79; Geum Poong Corp., 26 CIT at 909 n.4, 217 F. Supp. 2d at 1343 n.4.

[6]For example, Siam Food Prods. Public Co. took note that the Supreme Court's opinion in Pioneer Inv. Servs. "acknowledged a standard for excusable neglect that includes consideration of prejudice," and observed that the Pioneer Inv. Servs. analysis had been applied in E.I. DuPont de Nemours & Co. v. United States, 22 CIT 601, 603, 15 F. Supp. 2d 859, 861 (1998). *See* Siam Food Prods. Public Co., 22 CIT at 828, 24 F. Supp. 2d at 279 (*citing* Pioneer Inv. Servs., 507 U.S. at 395).

However, E.I. DuPont dealt with the interpretation of Rule 4(a)(5) of the Federal Rules of Appellate Procedure, which authorizes extensions of time for filing notices of appeal where "excusable neglect or good cause" is shown. *See* E.I. DuPont, 22 CIT at 602-03 & n.2, 15 F. Supp. 2d at 861 & n.2 (*quoting* F.R.App.P. 4(a)(5)). Thus, under the rule at issue in E.I. DuPont, "good cause" is a distinct ground for relief – parallel to, and entirely separate from, "excusable neglect." In contrast, USCIT Rule 24(a) treats "excusable neglect" *as one of four types of* "good cause" (together with "mistake," "inadvertence," and "surprise").

Similarly, in Pioneer Inv. Servs., the Supreme Court was grappling with the meaning of "excusable neglect" in the context of a Federal Rule of Bankruptcy Procedure permitting late filing of proofs of claim where the failure to comply with the filing deadline was the result of "excusable neglect." In the opening paragraph of its opinion, the Supreme Court framed the issue in that case

In any event, there is no need here to expressly define "inadvertence," or any of the other three types of "good cause" listed in Rule 24(a).[7] Habas does not argue that the specific facts set forth by the Domestic Producers cannot constitute "good cause" within the meaning of Rule 24(a).[8]

_____

as "whether an attorney's *inadvertent* failure to file a proof of claim within the deadline set by the court can constitute '*excusable neglect*' within the meaning of the [Bankruptcy] Rule." 507 U.S. at 382-83 (emphases added). *See also id*. at 391 (noting that the Federal Rules of Civil Procedure use the phrase "excusable neglect" in several different contexts).

In short, Pioneer Inv. Servs. treats at least some "inadvertence" *as a form of* "excusable neglect," in the context of an entirely different rule of procedure. Indeed, elsewhere in its opinion, the Supreme Court explains that – in the context of the Bankruptcy Rule there at issue – "excusable neglect" may embrace not only "inadvertence," but also "*mistake*, or carelessness, as well as . . . intervening circumstances beyond the party's control." *Id*. at 388 (emphasis added).

In contrast, USCIT Rule 24(a) treats "inadvertence" as a separate ground for excuse – parallel to, and entirely distinct from, "excusable neglect" (as well as "mistake" and "surprise"). *See also* USCIT R. 60(b)(1) (permitting court to reopen judgments for reasons of "mistake, inadvertence, surprise, or excusable neglect" where motion is made within one year of judgment).

[7]As an alternative to "inadvertence," the Domestic Producers contend that their circumstances also can be analyzed under the rubric of "excusable neglect." *See* Dom. Prods. Brief at 4 n.1. However, no party suggests that the outcome here depends on whether the Domestic Producers' conduct is characterized as "inadvertence" *versus* "excusable neglect."

[8]The Domestic Producers' claims that they were unaware of the existence of this action until early February are accepted at face value. They are nevertheless somewhat hard to swallow.

Specifically, "counsel for Habas conferred by telephone with counsel for Nucor in connection with Habas' motion for [an] injunction" in the instant action on November 9, 2005, even before the action was filed with the court. *See* Habas Memorandum of Points and Authorities Concerning Letter of the Court of February 23, 2006 at 3-4 (*citing* Habas Consent Motion for Injunction Against Liquidation of Entries (Nov. 9, 2005) at 3). It is unclear what counsel for Nucor thought he was consenting to, if he had no knowledge of this case.

Of course, the Domestic Producers were also served with a written copy of Habas' Consent Motion for Injunction Against Liquidation of Entries (Nov. 9, 2005) (as well as copies of the Summons and Complaint).

Instead, Habas contends that it has suffered prejudice as a result of the Domestic Producers'

tardiness. According to Habas:

> Nucor *et al*. have waited to file their motion to intervene until after the parties to this litigation, *i.e.*, Habas and the Government, agreed upon a schedule for these proceedings. Habas' position, during the discussion with the Government concerning the schedule, was predicated on the fact that the only parties to this litigation were Habas and the Government. If Nucor *et al*. are permitted to intervene at this late

---

Moreover, this action is discussed in papers filed in the Domestic Producers' own case – Nucor Corp. v. United States, Court No. 05-00616, in which the Domestic Producers challenge the same Final Results that Habas contests here. For example, the Response of Defendant-Intervenor ICDAS to Defendant's Motion for Voluntary Remand (Dec. 12, 2005), filed in Nucor, states:

> We note that the "date of sale" issue is now the subject of three CIT appeals that involve the Antidumping Order on rebar from Turkey. *See* Colakoglu v. United States, Court No. 04-00621 (filed Dec. 8, 2004); *Habas v. United States*, *Court No. 05-00613* (*filed Nov. 10, 2005*); Nucor Corp. v. United States, Court No. 05-00616 (filed Nov. 14, 2005).

Response of Defendant-Intervenor ICDAS to Defendant's Motion for Voluntary Remand at 2 (emphasis added). Similarly, the Commerce Department's December 29, 2005 letter transmitting the Administrative Record in Nucor is captioned in two other cases as well – one of which is Habas, the case at bar. In addition, the case at bar was referenced in the Court's December 30, 2005 opinion in Nucor, which denied the Domestic Producers' application for a preliminary injunction as to entries outside the period of review. *See* Nucor Corp. v. United States, 29 CIT ____, ____ n.19, 412 F. Supp. 2d 1341, 1354 n.19 (2005) (discussing "Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi A.S. v. United States, Court No. 05-00613 (filed Nov. 10, 2005), which – like this case [*i.e.*, Nucor, Court No. 05-00616] – concerns the 2003-2004 review"). Finally, Defendant-Intervenor ICDAS' Proposed Briefing Schedule – filed in Nucor – refers to the case here at bar, and notes that it "relate[s] to the same administrative review." *See* Defendant-Intervenor ICDAS' Proposed Briefing Schedule (Feb. 3, 2006) at 2 n.1.

Either the Domestic Producers' claims of ignorance are disingenuous, or they failed to read even the papers filed in *their own* court case. In any event, whether or not the Domestic Producers in fact had actual knowledge of this action, it is abundantly clear that they should have known of it.

date, then Habas will be compelled to rebut the arguments of two defendants, the Government and now Nucor *et al*., rather than just one, which changes considerably Habas' view of the amount of time it will need for its response brief.

Habas Brief at 1.

Habas properly does not argue that the mere addition of another opposing party, in and of itself, constitutes prejudice. The addition of another party to the case is the consequence of *any* intervention (whether late or not); and Rule 24(a) plainly contemplates that late intervention is permitted under certain circumstances. Thus, the mere fact of the addition of another party to a case (with the concomitant additional expense) can never constitute prejudice for purposes of analyzing an untimely motion to intervene.

The argument that Habas makes is slightly more nuanced. As set forth above, Habas claims that, in proposing the briefing schedule for this action, it assumed that its reply brief would be addressing only a single response brief (*i.e.*, that of the Government). Habas suggests that it would have sought more time for the filing of its reply if it were required to address *two* response briefs. *See* Habas Brief at 1.

Any such prejudice, however, can be readily remedied by according Habas an opportunity to propose an amended briefing schedule. Habas offers no reason why such an opportunity would not restore it to the position in which it would have been had the Domestic Producers timely sought to intervene.

Habas nevertheless maintains that "as a matter of equity Nucor *et al*. should not be allowed to take advantage of their own errors, whether negligent or inadvertent." Habas Brief at 1. Habas asserts that "[i]f Nucor wishes to make its views known to the Court, it may attempt to participate

as *amicus*, but it should not be granted party status at this time." *Id*. at 2. In their initial brief, the

Domestic Producers argued that *amicus* status is inadequate, emphasizing that "[a]micus cannot raise

issues, but may only respond to issues raised by other parties" (and thus intimating that they believed

that they *could* raise new issues of their own if granted status as an intervenor). *See* Dom. Prods.

Brief at 3. However, it is clear beyond cavil that defendant-intervenors such as the Domestic

Producers here must take a case as they find it. *See*, *e.g.*, Siam Food Prods. Public Co., 22 CIT at

830, 24 F. Supp. 2d at 280 ("Movants . . . are time barred from bringing their own case and thus even

as intervenors before the CIT may not bring their own challenges to the Secretary's determination.

Their role will be in support of the defendant.") (citations omitted).[9]

---

[9]*See also* Nakajima All Co. v. United States, 2 CIT 170, 171-72 (1981) ("The intervenor cannot circumvent the explicit statutory time limitation for contesting an antidumping duty determination [*i.e.*, 19 U.S.C. § 1516a(a)(2)] by simply making a cross-claim when the time for commencing an action has expired."); Fuji Elec. Co. v. United States, 7 CIT 247, 249, 595 F. Supp. 1152, 1154 (1984) (a party "appearing as intervenor, takes the action as it has been framed by the parties therein"); Silver Reed America, Inc. v. United States, 8 CIT 342, 349, 600 F. Supp. 2d 846, 851 (1984). *Cf*. Torrington Co. v. United States, 14 CIT 56, 59, 731 F. Supp. 1073, 1076 (1990) (rejecting intervenor's claims as "clearly beyond the scope of the original litigation"); National Assoc. of Mirror Mfrs. v. United States, 11CIT 648, 651, 670 F. Supp. 1013, 1015 (1987) (rejecting intervenor's claims as "unduly enlarg[ing] the pleadings"). *Cf*. Wire Rope Importers' Assoc. v. United States, 18 CIT 478, 479-80 (1994). *See generally* Habas Memorandum of Points and Authorities Concerning Letter of the Court of February 23, 2006; Defendant's Response to the Court's February 23, 2006 Letter.

Indeed, the Government emphasizes that, if Habas were to voluntarily dismiss its complaint in this action, any intervenors "could not maintain a claim." *See* Defendant's Response to the Court's February 23, 2006 Letter at 2 (*citing* Roberts v. Carrier Corp., 117 F.R.D. 426, 428 (N.D. Ind. 1987)).

In any event, the Domestic Producers now disclaim any interest in raising new issues in this action. *See* Domestic Producers Response to the Court's Letter of February 23, 2006 at 1.

There are, nevertheless, other reasons why *amicus* status would not fully protect the Domestic

Producers' interests. As the Domestic Producers note, only intervention "would ensure that the

Domestic Producers are granted access to the confidential record" in this case:

> Plaintiff . . . has raised issues that involve confidential data submitted to the
> Department of Commerce pursuant to an administrative protective order. Full
> briefing of these issues would necessarily involve reference to such data. However,
> the Domestic Producers understand that they would not be entitled to view, or
> reference, confidential data as *amici*.

Domestic Producers Response to the Court's Letter of February 23, 2006. Thus, as the Domestic

Producers conclude, "only intervention would allow for the Domestic Producers' interests to be fully

represented in this litigation." *Id*. Granting them *amicus* status simply "[would] not totally alleviate

th[e] prejudice" that they would suffer if their motion were denied. *See* Siam Food Prods. Co., 22

CIT at 830, 24 F. Supp. 2d at 280.

### III.  Conclusion

Habas' sole stated objection to the Domestic Producers' untimely intervention in this action

is the prejudice that Habas claims it will suffer. But the potential prejudice to the Domestic

Producers clearly outweighs the minimal prejudice that Habas alleges; and, in any event, the

potential prejudice to Habas is readily cured by according Habas an opportunity to propose an

amended scheduling order in this matter.

Accordingly, for all the reasons stated above, the Domestic Producers' out-of-time Motion to Intervene As A Matter of Right must be granted.

_____/s/_____
Delissa A. Ridgway
Judge

Dated:  April 10, 2006
       New York, New York

<u>ERRATA</u>

<u>Habas Sinai ve Tibbi Gazlar Istihsal Endustrisi A.S. v. United States</u>, Court No. 05-00613, Slip Op. 06-51, dated April 10, 2006.

Page 2:     In the third line from the bottom, replace "November 10, 2006." with "November 10, 2005."

Page 4:     In the second paragraph of footnote 4, replace "(Nov. 9, 2006)" with "(filed Nov. 10, 2005)".

Page 7:     In the second paragraph of footnote 8, replace "(Nov. 9, 2005)" with "(filed Nov. 10, 2005)".

            In the third paragraph of footnote 8, replace "(Nov. 9, 2005)" with "(filed Nov. 10, 2005)".

Page 8:     In the first line, replace "has suffered prejudice as a result of" with "is prejudiced by".

Page 10:    In line 9 of the main text, at the end of the paragraph (*i.e.*, following the superscript for footnote 9), insert "*Cf.* Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1921."

Page 11:    In the penultimate line of the first paragraph, replace "<u>Siam Food Prods. Co.</u>," with "<u>Siam Food Prods. Public Co.</u>,".

April 18, 2006